Ruth Baker v. Commissioner.
Baker v. Commissioner
Docket No. 3645-62.
United States Tax Court
T.C. Memo 1963-302; 1963 Tax Ct. Memo LEXIS 46; 22 T.C.M. (CCH) 1589; T.C.M. (RIA) 63302; November 1, 1963
Wayne E. Davis, 38121 Euclid Ave., Willoughby, Ohio, for the petitioner. John P. Graham, for the respondent. SCOTT Memorandum Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1959 and 1960 in the amounts of $197.63 and $250.28, respectively, and by amended answer claimed increased deficiencies of $129.59 and $135.99, making the total deficiencies at issue for those years $327.22 and $386.27, respectively. The issues for decision are: (1) Whether petitioner is entitled to a deduction in each of the years 1959 and 1960 for $1,000 because of a nonbusiness *47 bad debt loss in excess of $2,000 sustained in 1959. (2) What is the proper basis for computation of depreciation on a two-family house from which petitioner received rental income during the years 1959 and 1960. All of the facts are stipulated and are found accordingly. Petitioner, an unmarried individual, filed her Federal income tax returns for the calendar years 1959 and 1960 with the district director of internal revenue at Cleveland, Ohio. During the period November 15, 1949 to November 1955, petitioner loaned $8,881.46 to Raymond E. Cattell (hereinafter referred to as Cattell). On November 12, 1953, Cattell purchased a property located at 4332 River Street, Willoughby, Lake County, Ohio, which consisted of a lot with a two-family house thereon. The purchase price of $20,000 was paid by Cattell with $5,000 of his own funds and $15,000 which the borrowed from the Andrews School for Girls. Cattell executed a note for the $15,000 payable to the Andrews School for Girls, which note was secured by a first mortgage on the property, the mortgage being dated September 26, 1953, and recorded on November 12, 1953, in the mortgage records of Lake County, Ohio. On March 11, 1954, Cattell *48 executed a quitclaim deed, conveying an undivided one-half interest in the property at 4332 River Street, Willoughby, Ohio to petitioner and delivered this quitclaim deed to her as a gift. At the time of the execution of the quitclaim deed and its delivery to her, petitioner knew of the outstanding mortgage in favor of the Andrews School for Girls on the property. This quitclaim deed was not received for recording in the recorder's office of Lake County, Ohio until April 11, 1956, and was recorded on April 12, 1956. On June 10, 1954, Cattell refinanced the property, executing a new note to the Andrews School for Girls in the amount of $17,000 and a new mortgage securing the note. This mortgage was recorded on June 18, 1954, in the mortgage records at Lake County, Ohio. Petitioner knew of the refinancing at the time Cattell executed the new mortgage to the Andrews School for Girls. Cattell died testate on April 14, 1956. His will dated April 8, 1956, was filed for probate in Lake County, Ohio. By this will petitioner was named executrix. Petitioner qualified and was appointed executrix of Cattell's estate on May 18, 1956. Petitioner served as executrix of Cattell's estate from the *49 time of her appointment until January 27, 1960, when the First, Final, and Distributive Account for Cattell's estate was filed by petitioner as executrix. Cattell's will provided for payment of all his debts and funeral expenses out of the estate. He bequeathed to his brother his automobile and tools, and to his niece and each of three nephews the sum of $1,000. All of the residue of his property, real, personal or mixed, he bequeathed and devised to petitioner. Petitioner presented her claim in the amount of $8,881.46 for money loaned to Cattell between November 15, 1949 and November 1955 against the estate by filing a petition for allowance thereof with the Probate Court. The Probate Court allowed petitioner's claim against the estate in the amount claimed. At the date of Cattell's death the debt outstanding upon the note to the Andrews School for Girls secured by a mortgage on the property at 4332 River Street, Willoughby, Ohio was $16,657.36. No claim was filed by the Andrews School for Girls with petitioner as executrix or in the Probate Court proceeding in Lake County, Ohio for the estate of Cattell upon the note or mortgage. Petitioner as executrix, on June 25, 1956, filed *50 an inventory of the assets in Cattell's estate which was based on the estimates of three disinterested appraisers appointed by the Probate Court of Lake County, Ohio. These appraisers estimated assets of the estate as follows: Personal goods and chattels
$ 120.00
Real estate - parcel 1, being sublot
No. 117, Eastlake, Ohio
10,500.00
Real estate - parcel 2, being sublot
No. 27, Eastlake, Ohio, a vacant lot
600.00
Real estate - parcel 3, being sublot
No. 23, Smart allotment
No. 2 Willoughby, Ohio, a vacant
lot fronting on Wood Street
3,000.00
Real estate - parcel 4, an undivided
one-half interest in the property at
4332 River Street, Willoughby
15,000.00
The fair market value of the undivided one-half interest of Cattell in the property at 4332 River Street, Willoughby, Ohio was $15,000 at the date of his death. Petitioner acquired title to all four parcels of the real estate described in this inventory of assets as residuary devisee under Cattell's will. The real estate listed in the inventory as parcel 1, being sublot No. 117, Eastlake, Ohio, was sold by petitioner for $13,000 prior to the closing of the estate of Cattell. In her 1958 income tax *51 return petitioner claimed a basis of $12,500 prior to depreciation for purposes of computing long-term capital gain upon the sale of this parcel of real estate. Petitioner filed in the Probate Court of Lake County, Ohio an application with itemized statement for determination of inheritance tax, which she subscribed to on June 7, 1958, which listed the assets shown in the inventory filed on June 25, 1956, at the values there stated, and in addition listed an account in a savings and loan association of $35.02 and a bank account of $6.45, making total personal property of $161.47 and total real property of $29,100. This statement listed total liabilities as follows: Court costs (estimated)
$ 150.00
Fiduciary fee (estimated)
375.00
Attorney fee (estimated)
1,250.00
Funeral expense
787.26
Debts
The Andrews School for Girls, Wil-
loughby Ohio - Note and mortgage
16,657.36
Florence W. Ingersoll, 1480 Prospect
St., Mentor, Ohio - Note and Mort-
gage
5,650.32
Melvin Yaxley, 3845 River St., Wil-
loughby, Ohio
1,300.00
H. & J. Hardware, Willoughby,
Ohio
22.79
Lake Shore Lumber Co., Willoughby,
Ohio
76.83
Stalker's Service Station, Euclid
Ave., Willoughby, Ohio
$ 10.00
Arthur H. Svedberg, M.D., 13944
Euclid Ave., Cleveland, Ohio
150.00
Ruth E. Baker, 4323 River St., Wil-
loughby, Ohio
8,826.46
Treasurer of Lake County Taxes and
Assessments
968.88
$36,224.90
*52 This itemized statement, therefore, showed total assets of $29,261.47 and total liabilities of $36,224.90. Neither the item of $1,250 shown as attorney fee nor the item of $375 shown as fiduciary fee was shown as a claim or allowed as a claim or expense of the estate in the probate proceedings. The first, final and distributive account for the estate of Cattell as yfiled by petitioner as executrix on January 27, 1960, set forth the following: To
Receipts
Expenditures
1956
First Federal Savings & Loan Assoc.
$ 35.02
Savings Account
The Cleveland Trust Co. Comm. Account
6.45
Ruth Baker Advanced to pay debts
2,093.95
Sept. 4
Arthur H. Svedburg, M.D. Prof. Services
$ 150.00
Sept. 24
Lake Shore Lumber & Coal Co. Account
76.83
Sept. 24
H & J Hardware Co. Account
22.79
Nov. 4
Melvin Yaxley Note
1,498.92
Nov. 20
Davis Funeral Home Funeral Expenses
787.26
Treasurer of Lake County Taxes & Assess
968.88
1957
May 16
Loveland Memorials Grave marker
180.25
1958
Oct. 24
Russell Realty Real Estate Commission
650.00
Wm. S. & Nancy Buchanan - Sale of
13,000.00
Eastlake Sublot No. 117
Land Title Gtee & Trust Co.: Examination Fee
45.00
Premium
19.50
Recorder's Fee
1.75
Revenue Stamps
14.60
Wayne E. Davis preparation of deed
7.50
One-half escrow fee
25.00
Taxes and Assessments prorated to
124.91
10/23/58
Ruth Baker - amount due on mortgage
6,385.88
purchased from Florence W. Ingersoll to
avoid foreclosure
1959
Sept. 25
Charles Cattell, Sr. Legacy to Charles
1,000.00
Cattell, Jr.
Charles Cattell, Sr. Legacy to James
1,000.00
Cattell
Charles Cattell, Sr. Legacy to William
1,000.00
Cattell
Eric Guenther Legacy to Rita Mae
1,000.00
Guenther
Charles Cattell, Sr. Compromise of
100.00
labor claim
Probate Court of Lake County Costs
76.35
$15,135.42
$15,135.42
$16,657.36 mortgage to The Andrews
School for Girls assumed by Ruth Baker,
and payment of $8,826.46 [1] claim of
said Ruth Baker waived to avoid sale of
real estate.
*53 On her 1959 income tax return petitioner claimed a nonbusiness bad debt to her from Cattell of $8,881.46 of which she stated $1,918.03 was recovered, leaving $6,963.43 uncollectible in 1959, of which she claimed $1,000 as a deduction and showed the remaining amount of $5,963.43 as a loss carry-over. On her 1960 income tax return petitioner claimed a $1,000 deduction for the loss from a nonbusiness bad debt claimed in 1959 carried forward in the amount of $5,963.00. Respondent in computing the deficiency determined in the notice to petitioner disallowed petitioner's claimed nonbusiness bad debt loss deduction in each of the years 1959 and 1960. Petitioner assumed the mortgage dated June 10, 1954, upon the property at 4332 River Street in Willoughby at a date subsequent to the death of Cattell and has made payments upon this mortgage since Cattell's death. No capital improvements or additions were made to the property at 4332 River Street, Willoughby, Ohio from November 12, 1953, through March 11, 1954. Petitioner paid *54 for no capital improvements to the property at 4332 River Street in Willoughby, Ohio from March 11, 1954, through 1960, except as to carpeting, lawn mower, rotohoe, and sprayer on which depreciation is computed separately from that on the building in her 1959 and 1960 income tax returns. The cost basis to Cattell on November 12, 1953, of the property at 4332 River Street in Willoughby, Ohio was $14,870 for the house and $5,130 for the land. The similar basis to petitioner of the undivided one-half interest which she acquired as devisee on April 14, 1956, was $11,153 for the house and $3,847 for the land. Petitioner in her Federal income tax returns for each of the years 1956, 1957 and 1958 reported net taxable income computed by including therein a net gain or loss from rental property. In computing the gain or loss from rental property in each of these years petitioner claimed depreciation deductions on the building at 4332 River Street, Willoughby, Ohio on a straight line basis using a 30-year life and showing a cost or other basis of the building of $32,000. The resulting yearly depreciation shown was $1,066 for 1956 of which she claimed as a deduction $710.88 (8 months), and *55 for the years 1957 and 1958 was $1,066.66 of which she claimed the total yearly amount as a deduction. For each of the years 1959 and 1960 she claimed depreciation deductions on this building of $1,066.66 computed as follows: Depreciation
allowed
Method of
Rate (%)
Deprecia-
Date
Cost or
(or allowable)
computing
on life
tion for
Year
Acquired
other basis
in prior years
depreciation
(years)
this year
1959
$32,000
$3,910.20
Straight line
30
$1,066.66
1960
$32,000
$4,976.86
Straight line
30
$1,066.66
Respondent in computing the deficiencies as shown in his statutory notice of deficiency to petitioner for the years 1959 and 1960 made no adjustment in the deduction for depreciation claimed by petitioner on her income tax returns for those years. Respondent by amended answer filed at the trial claimed increased deficiencies based upon allowing as a deduction to petitioner for depreciation on the building at 4332 River Street, Willoughby, Ohio, for each of the years 1959 and 1960 the amount of $523.04 and disallowing the balance of the depreciation deduction claimed by petitioner on this building in each of these *56 years. Respondent computed the allowable depreciation by using an unadjusted basis of the building to petitioner of $18,588, composed of $7,435 as the basis of the half interest she acquired by gift and $11,153 as the basis of the half interest she acquired by devise, reducing the unadjusted basis of $18,588 by the depreciation previously allowed for the years 1956, 1957 and 1958 which totaled $3,910.20 and applying to the remaining basis of $14,677.80 a percentage rate based on a useful life of 27 years from January 1, 1959. The useful life used by respondent in his amended answer was determined by accepting the useful life of 30 years beginning in 1956 as claimed by petitioner which would result in 27 years useful life remaining as of the beginning of 1959. The primary question for decision here is whether the debt of Cattell to petitioner in the amount of $8,881.46 became worthless in the year 1959 so that petitioner is entitled to deductions in 1959 and 1960 for a non-business bad debt loss. The burden is, of course, upon petitioner to establish that the debt was completely worthless in 1959. Earl V. Perry, 22 T.C. 968 (1954). There is no question that petitioner *57 released her debt by a waiver filed with the Probate Court and approved by that Court in 1960, and that this waiver, though voluntary, was unquestionably made in order to avoid the sale of real estate for the payment of the indebtedness. As petitioner points out, this was certainly a legitimate business reason for waiving the indebtedness. Therefore, in our view the fact that petitioner did not sell the real property should not prohibit her from having a deduction for a bad debt if in fact the estate was so insolvent that the debt would not have been collectible from the assets of the estate if the real property had been sold to satisfy her indebtedness. See Caroline D. Thompson, 22 T.C. 507 (1954). The difficulty here is whether in fact the debt was uncollectible from the assets of the estate. [1]
*58 As respondent points out, debts take priority for payment over bequests and petitioner as executrix paid out the bequests without satisfying her indebtedness. However, if the amount of the fair market value of the real estate as of the date of Cattell's death is to be considered as the amount this property should bring in determining whether petitioner's debt was collectible, it appears that if the entire mortgage to the Andrews School for Girls is considered as a debt of the estate, that over $2,000 of Cattell's debt to petitioner was uncollectible. Petitioner claimed $6,963.43 as uncollectible and paid out specific bequests of only $4,176.35. Apparently petitioner in arriving at the amount she claimed as the uncollectible portion of her indebtedness considered the $2,500, received upon the sale of the property at No. 117 East Lake in excess of its appraisal value in the estate, as an asset of the estate. This parcel of real estate appears to have been sold in 1958. Therefore, the real question is whether petitioner can be said to have sustained a loss in 1959 and 1960 since there is no showing in the record of the fair market value of the real property which Cattell owned at the *59 date of his death and which remained unsold in 1959 and 1960 as of any time in either of the years 1959 or 1960. Petitioner argues that where a creditor accepts a voluntary conveyance of property in full satisfaction of an indebtedness, the fair market value of the property so conveyed at the time of the conveyance is considered as a receipt of payment on the debt and the amount of the indebtedness not so satisfied may be deducted as a bad debt. Petitioner cites in support of this argument cases reaching this general conclusion under factual situations entirely different from the facts in the instant case. Here petitioner never accepted the real property in satisfaction of her indebtedness but obtained the property by devise and waived her indebtedness. However, if petitioner is to be considered in effect to have accepted the property in satisfaction of her indebtedness, we agree with respondent that this acceptance under the law of Ohio would have been not earlier than 1960 when the first, final and distributive account of the estate was filed and approved by the Probate Court. In Ohio "the real estate of a decedent descends directly to his heirs or devisees and is not assets *60 of the estate to be administered by the executor or administrator" except when the personal estate is insufficient to pay all debts of the deceased the executor is authorized by statute to sell the real estate. Nolan v. Kroll, 37 Ohio App. 350 (1930), 174 N.E. 750. Section 2127.02 of the Revised Code of Ohio[2] provides that as soon as an executor ascertains that the personal property in his hands is insufficient to pay all the decedent's debts, he shall commence an action in the Probate Court to sell the decedent's real estate. Section 2127.03 of the Revised Statutes of Ohio[3] provides that the executor shall apply to sell the decedent's real estate when the personal property is insufficient to pay the decedent's debts and legacies which are a charge upon the real estate. Where a decedent having both personal and real property makes provision for pecuniary legacies and then bequeaths and devises the residue of his personal and real property, the residuary real property is chargeable with and held for payment of the legacies. Snyder v. LaDue, 100 Ohio App. 526 (1955), 137 N.E. 432. *61 It therefore appears that under Ohio law, petitioner as executrix, could have obtained authority to sell decedent's real estate to pay his debts and the pecuniary legacies. The Ohio law further provides that the real estate shall not be sold by the executor if any person interested in the estate gives bond to the executor to pay all debts and legacies. [4] See Stout v. Stout, 82 Ohio St. 358 (1910), 92 N.E. 465. *62 The Ohio statutes apparently contemplate that the real estate may be sold a sufficient time after the date of the decedent's death that its fair market value may have changed since that date for they provide that the probate court may order a sale in accordance with the appraisement of the real estate contained in the executor's inventory or order a new appraisement. [5]
*63 Since there is no evidence in the record here to show the fair market value in 1960 of the real estate which petitioner received by devise from Cattell or its fair market value in 1959, the year in which petitioner claims the debt became worthless, petitioner has failed to establish that the debt was not collectible in 1959 or 1960 if she had used the remedies available to her of having the real estate sold to pay the debt. Since petitioner has failed to show that the debt was not collectible in 1959 or 1960, her waiver of the debt does not establish the deductibility of any portion thereof as a worthless nonbusiness bad debt in computing her taxable income for 1959 and 1960. Earl V. Perry, supra. We sustain respondent in his disallowance of petitioner's claimed bad debt deductions in 1959 and 1960. Under the provisions of section 1014, 1015, and 1016 of the Internal Revenue Code of 1954, petitioner's basis for depreciation in the building at 4332 River Street, Willoughby, Ohio as of January 1, 1959, is the value at the date of Cattell's death of the inherited one-half interest plus one-half the basis that Cattell had in the building for *64 the one-half interest given to her by Cattell less the depreciation previously allowed to her which resulted in a reduction of her income taxes for prior years. The basis as alleged by respondent in his amended answer is computed in this manner. The evidence in the record shows all the facts necessary to this computation. Respondent used the same useful life as used by petitioner by merely subtracting 3 years from the remaining useful life claimed by petitioner in 1956 to determine the remaining useful life as of January 1, 1959. Petitioner did not argue in either her original or reply brief that the depreciation as claimed in her 1959 and 1960 returns is correct or that respondent's computation as alleged in his amended answer is incorrect. Respondent in his reply brief assumes that petitioner's failure to argue the depreciation issue in her original brief is a concession of that issue. It is not clear whether petitioner has conceded the issue but it is clear from the record in the instant case that respondent's computation of petitioner's depreciation on the building at 4332 River Street, Willoughby, Ohio for the years 1959 and 1960 as set forth in his amended answer, is correct. *65 We therefore hold that petitioner is entitled to a deduction for depreciation on this building for each of the years 1959 and 1960 of only $523.04. Decision will be entered for respondent. Footnotes
1. The amount of $8,826.46 apparently is a slight misstatement and in fact refers to the $8,881.46 debt owing to petitioner which was previously claimed.↩
1. The following provision of Sec. 1.166-1(d)(2)(iii), Income Tax Regs. is relied on by petitioner: Sec. 1.166-1 Bad debts. * * * (iii) Claim against decedent's estate. The excess of the amount of the claim over the amount received by a creditor of a decedent in distribution of the assets of the decedent's estate may be considered a worthless debt under section 166.↩
2. Sec. 2127.02 Payment of debts. As soon as an executor or administrator ascertains that the personal property in his hands is insufficient to pay all the debts of the deceased, together with the allowance to the widow and children for twelve months, and the costs of administering the estate, he shall commence a civil action in the probate court of the court of common pleas for authority to sell the decedent's real estate. ↩
3. Sec. 2127.03 Payment of legacies. When by operation of law or the provisions of a will a legacy is effectual to charge real estate, and the personal property is insufficient to pay such legacy, together with all the debts, the allowance to the widow and children for twelve months, and the costs of administering the estate, the executor or administrator with will annexed shall commence a civil action in the probate court or the court of common pleas for authority to sell the real estate so charged. If the executor, administrator, or administrator with the will annexed fails to commence the action mentioned in this section or section 2127.02 of the Revised Code, the probate court wherein letters testamentary have been granted, upon its own motion or upon motion by a creditor or legatee, shall order such executor, administrator, or administrator with the will annexed to commence such an action and proceed therein in the manner prescribed by section 2127.04 to 2127.43, inclusive of the Revised Code.↩
4. Sec. 2127.31 Persons interested may give bond to prevent sale. An order to sell the real estate of a deceased person shall not be granted in an action by an executor or administrator, if, after the action is commenced and before the order of sale is granted, any person interested in the estate gives bond to the executor or administrator in a sum with sureties approved by the probate court or the court of common pleas, conditioned to pay all debts and legacies found due from the estate, the charges of administration, and the allowance in money to the widow, so far as the personal estate of the deceased is insufficient therefor. If such bond is not given until after the order of sale is granted, and the executor or administrator in reliance thereon abates the action, such bond shall be binding upon the obligors and may be enforced as though given prior to the granting of the order of sale.↩
5. Sec. 2127.22 Appraisement may be dispensed with; new appraisement; appraisers. If an appraisement of the real estate is contained in the inventory required of an executor or administrator by section 2115.02 of the Revised Code, and of a guardian by section 2111.14 of the Revised Code, the probate court or the court of common pleas may order a sale in accordance therewith or order a new appraisement. If a new appraisement is not ordered, the value set forth in the inventory shall be the appraised value of the real estate. If the court orders a new appraisement the value returned shall be the appraised value of the real estate. If the interest of the deceased or ward in the real estate is fractional and undivided, and if a party prays for and the court orders the entire interest in the real estate to be sold, a new appraisement of the entire interest in the real estate shall be ordered. If the prayer of the petition is granted and new appraisement is ordered, the court shall appoint three judicious and disinterested persons of the vicinity not next of kin of the petitioner to appraise the real estate in whole and in parcels of its true value in money. Where the real estate lies in two or more counties the court may appoint appraisers in any or all of the counties in which the real estate or a part thereof is situated.↩